UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

LONNIE KADE WELSH,
Institutional ID No. 6516607

Plaintiff,

v.

No. 5:21-CV-00156-H

STEPHEN THORNE,

Defendant.

**ORDER ACCEPTING FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE**

The United States Magistrate Judge made findings, conclusions, and a recommendation in this case. Plaintiff filed objections (Dkt. No. 22) and later, a motion asking the Court to expedite a ruling on his objections (Dkt. No. 23). The Court conducted a de novo review of the relevant portions of the Magistrate Judge's report. For the reasons stated below, the Court accepts the findings, conclusions, and recommendation of the United States Magistrate Judge, overrules Plaintiff's objections, and denies his motion as moot.

## 1. Standard of Review

"The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1). In contrast, the district judge reviews any unobjected-to findings, conclusions, and recommendations for plain error. The Court has examined the record and reviewed the unobjected-to portions of the FCR for plain error and, finding none, expressly accepts and adopts those portions of the Magistrate Judge's findings, conclusions, and recommendation.

Additionally, in light of Plaintiff's specific objections, the Court has conducted a de novo review of the relevant portions of the FCR and the record in this case. Many of Plaintiff's objections are either restatements of arguments made in his amended complaint (as supplemented by his responses to the Magistrate Judge's questionnaire), arguments thoroughly addressed by the FCR, mere disagreements with the Magistrate Judge's wording, or conclusory statements insisting that his claims have merit. The Court finds it necessary to address only some of these objections. Thus, Plaintiff's objections are overruled, and the Court expressly adopts the Magistrate Judge's reasoning.

## 2. Background and Plaintiff's Claims

After a jury trial in 2015, the state court adjudicated Plaintiff as a sexually violent predator (SVP) under Texas Health & Safety Code §§ 841.061 and 841.062. As a result, Plaintiff is now confined in the Texas Civil Commitment Center (TCCC) for tiered, inpatient sex-offender treatment. When he filed this civil action, however, he was a prisoner[1] proceeding pro se and *in forma pauperis*.

[1]It is undisputed that Plaintiff was a prisoner confined in the Lamb County Jail when he initiated this civil action. Dkt. No. 1 at 15, 81. Accordingly, the Court has applied the fee-assessment and screening standards of the PLRA. *See* Dkt. Nos. 8; 13; 20. *See also* 28 U.S.C. §§ 1915(b)(1); 1915(e)(2)(b); 1915A. However, Plaintiff has maintained his objection to the application of the PLRA to his case. *See* Dkt. Nos. 12; 14. Specifically, Plaintiff argues that the PLRA only applies to complaints about prison conditions. Dkt. No. 14. But Sections 1915 and 1915A include no such limitation. And as the Magistrate Judge explained, these sections attach to Plaintiff's complaint based on his prisoner status at the time of filing. *See Harris v. Garner*, 216 F.3d 970, 975 (11th Cir. 2000) ("It is confinement status at the time the lawsuit is 'brought,' i.e., filed, that matters."); *Kerr v. Puckett*, 138 F.3d 321, 322–23 (7th Cir. 1998) (concluding that for purposes of applying the PLRA, a plaintiff's confinement status at the time the litigation begins is all that matters, not his status at the time of the injury—so a parolee-plaintiff avoided the application of the PLRA by waiting to file his lawsuit until after his release from prison).

In this action under 42 U.S.C. § 1983, Plaintiff sues a single defendant—Dr. Stephen Thorne, the psychologist contracted by the state to conduct his 2019 biennial evaluation to assist the state court in determining whether he continues to meet the criteria for civil commitment. Plaintiff takes issue with much of Dr. Thorne's report, but he identifies three claims at issue here. He alleges that Dr. Thorne (1) violated his rights under the Fourth Amendment "by his unreasonable seizure of Welsh," (2) violated his Fourteenth Amendment substantive due process right to liberty by arbitrary and capricious measures, and (3) violated his Fourteenth Amendment substantive due process right by "deliberately diagnosing Welsh wrongly either with Pedophila [sic], Ephebophilia and/or the Behavioral Abnormality." Dkt. No. 1 at 13. Plaintiff seeks only monetary relief.

**3. The Magistrate Judge's Report**

The Magistrate Judge concluded that (1) Plaintiff failed to state a viable substantive due process claim under the Fourteenth Amendment, (2) his Fourth Amendment claim, if any, is *Heck*-barred, and (3) alternatively, all of Plaintiff's claims are barred from federal review by the *Rooker-Feldman* doctrine. Dkt. No. 20.

The Magistrate Judge thoroughly explained the bases for these conclusions, finding that although Plaintiff alleges several perceived errors in Dr. Thorne's report, Dr. Thorne's professional opinion, diagnoses, and methodology are presumptively valid. *See id.* at 18 (citing *Youngberg v. Romeo*, 457 U.S. 307, 322 (1982)). Also, Plaintiff failed to demonstrate any substantial departure from accepted professional judgment, practice, or standards to show that Dr. Thorne's conclusion was based on anything other than his professional judgment. *See id.* And despite Plaintiff's apparent disagreement with Dr. Thorne's evaluation, nothing in Dr. Thorne's report—or the trial court's reliance on it—was "so

egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Dkt. No. 20 at 18 (citing *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998) (providing that "the substantive component of the Due Process Clause is violated by executive action only when it can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense") (internal quotation marks and citation omitted)). Finally, the Magistrate Judge found Plaintiff's claim that Dr. Thorne's report was fraudulent to be wholly conclusory, especially given that Plaintiff failed to allege any supporting facts when asked to do so in the court's questionnaire. Dkt. No. 20 at 18.

Moreover, the Magistrate Judge discussed the biennial review process provided by Section 841 of the Texas Health & Safety Code and explained that Dr. Thorne is not responsible for Plaintiff's continued confinement. The decision to continue Plaintiff's civil commitment ultimately rested on the state trial court. And even if Dr. Thorne's report had been favorable to Plaintiff, it would not entitle him to release. At most, if the trial court made the necessary finding, Plaintiff would have received an evidentiary hearing. Thus, Plaintiff's focus on Dr. Thorne is misplaced.

In sum, the Magistrate Judge concluded that Plaintiff failed to establish any constitutional errors in Dr. Thorne's evaluation, so his substantive due process claims must fail. And in any event, the trial court—not the contracted psychologist—made the ultimate decision to continue Plaintiff's civil commitment without modifying any of the conditions. So Dr. Thorne is not directly responsible for Plaintiff's confinement. Additionally, even if Plaintiff were successful in invalidating Dr. Thorne's report, he would not be entitled to release from his civil commitment. Thus, Plaintiff's Fourth Amendment claim against Dr. Thorne for "unreasonable seizure" must be dismissed. Additionally, even if Plaintiff had

any viable Fourth Amendment claim against Dr. Thorne, it would be barred because Plaintiff has not met the favorable termination requirement of *Heck v. Humphrey*. Alternatively, the Magistrate Judge concluded that federal review of Plaintiff's claims should be barred by the *Rooker-Feldman* doctrine.

As a result, the Magistrate Judge recommended that the Court dismiss Plaintiff's complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

**4. Plaintiff's objections**

Plaintiff makes three specific objections to the Magistrate Judge's report. First, he objects to the Magistrate Judge's application of the *Rooker-Feldman* doctrine. Because, as explained below, Plaintiff's claims fail on the merits, it is not necessary for the disposition of this complaint for the Court to address Plaintiff's objections to the alternative *Rooker-Feldman* analysis.

**A. Unreasonable Seizure (Fourth Amendment Claim)**

Next, Plaintiff objects to the Magistrate Judge's analysis of his Fourth Amendment claim. Specifically, Plaintiff argues that his claim cannot be *Heck*-barred because, as Judge Bryant discussed, invalidating Dr. Thorne's report would not entitle him to release. And Plaintiff seems to acknowledge that the state-court judge could have continued his commitment even without Dr. Thorne's report. *See* Dkt. No. 22 at 4 ("state law . . . does not require the presiding to have any evidence to deny a biennial review.") In fact, he asserts that even if Dr. Thorne's report were favorable, the trial court, in its discretion, could have still declined to make a probable cause finding and closed his biennial review without a hearing. *See* Dkt. No. 22 at 4–5 (citing *In re Commitment of Richards*, 395 S.W.3d 905 (Tex.App.—Beaumont, 2013).

But this argument defeats his Fourth Amendment claim altogether. And it is a stark departure from his earlier pleadings. *See* Dkt. No. 17 at 1 (asserting that but for Dr. Thorne's report, he would have been released from confinement); Dkt. No. 1 at 12 (alleging that Dr. Thorne caused him "the loss of the enjoyment of life by depriving him time with family and friends"). Simply put, if—as Plaintiff now concedes—Dr. Thorne's report did not cause his continued confinement, then Plaintiff has no claim against Dr. Thorne for "unreasonable seizure." So, Plaintiff has failed to state a viable Fourth Amendment claim against Dr. Thorne.

And alternatively, if—as Plaintiff originally argued—Dr. Thorne's report were directly responsible for his continued commitment, then Plaintiff's allegations would necessarily undermine the validity of his confinement. As a result, as the Magistrate Judge explained, if Plaintiff had stated a viable Fourth Amendment claim against Dr. Thorne, it would be barred by *Heck*. Plaintiff's objection is overruled.

**B. Substantive Due Process (Fourteenth Amendment Claims)**

Finally, Plaintiff objects to the Magistrate Judge's conclusions that Dr. Thorne exercised professional judgment, that his evaluation did not shock the conscience, and that Plaintiff's allegations of fraud were unsupported. He also raises a new claim that "his rights to procedural process in the State court are a sham and mere pretense that denies Welsh an adequate review denying due process." Finally, he contends that Dr. Thorne's report is fraudulent because it misdiagnoses him with pedophilia and ephebophilia without adequate factual support, and because Dr. Thorne "[n]ever does . . . articulate how Welsh has an emotional or volitional capacity disorder."

**i. Applicable standard**

Plaintiff objects to the Magistrate Judge's analysis of his substantive due process claims under the shock-the-conscious standard stated in *Lewis*, arguing that the *Youngberg* professional-medical-judgment standard should apply instead. But these standards are not mutually exclusive. Moreover, the Magistrate Judge applied both standards and found that Plaintiff's claims fail under either one. The Court agrees.

Under the *Youngberg* standard, Dr. Thorne can be liable only if his recommendation "is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Youngberg*, 457 U.S. at 323. But the opinions of qualified professionals are "presumptively valid" and "there certainly is no reason to think judges or juries are better qualified than appropriate professionals in making such decisions." *Id.*; *see also Parham v. J. R.*, 442 U.S. 584, 607 (1979) (explaining that "neither judges nor administrative hearing officers are better qualified than psychiatrists to render psychiatric judgments"). The Magistrate Judge found that Dr. Thorne's diagnoses and professional opinion were presumptively correct, and that Plaintiff failed to show any substantial departure from accepted professional judgment. Additionally, the Magistrate Judge found that Plaintiff failed to plead any facts—despite an express invitation to do so—to support his claim that Dr. Thorne's evaluation was fraudulent rather than based on his professional opinion. Thus, the Magistrate Judge concluded that Plaintiff's substantive due process claim against Dr. Thorne must fail under the *Youngberg* standard.

But Plaintiff also claims that Dr. Thorne's decisions were "arbitrary and capricious" in violation of his substantive due process rights. And the Magistrate Judge explained that

"only the most egregious official conduct" is considered "arbitrary, or conscience shocking, in a constitutional sense." *Lewis*, 523 U.S. at 846 (quoting *Collins v. Harker Heights*, 503 U.S. 115, 129 (1992)). Also, the Magistrate Judge discussed Dr. Thorne's evaluation and found that it was not "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Lewis*, 523 U.S. at 847 n.8. Thus, the Magistrate Judge concluded that Plaintiff failed to plead facts showing that Dr. Thorne's evaluation was arbitrary in a constitutional sense, so his claims must fail under the *Lewis* standard.

**ii. The biennial review process**

"A civilly-committed person also has a liberty interest in gaining release from detention if the reasons that justified the commitment no longer exist." *Van Orden v. Stringer*, 937 F.3d 1162, 1167 (8th Cir. 2019) (citing *O'Connor v. Donaldson*, 422 U.S. 563 (1975)). State law requires the state trial court to review a civilly committed SVP's status every two years. Tex. Health & Safety Code §§ 841.101–.103; *In re Commitment of Black*, 594 S.W.3d 590, 591 (Tex. App.—San Antonio, 2019). In preparation for the state court's biennial review, the TCCO "contracts with an expert to conduct an examination of the person," then it provides a report of the examination to the court and to the committed person, including "consideration of whether the conditions or requirements of the commitment should be modified and whether the person should be released." *Id.* (citing § 841.101(a)–(b)). Here, Dr. Thorne was contracted to conduct Plaintiff's biennial evaluation in 2019.[2]

---

[2] Presumably, Plaintiff has undergone at least one, but likely two, subsequent biennial evaluations since Dr. Thorne's report, further attenuating Dr. Thorne's involvement from Plaintiff's continued confinement.

But ultimately, the trial court must determine "whether there is probable cause to believe the person's behavioral abnormality has changed to the extent that the person is no longer likely to engage in a predatory act of sexual violence," or whether to modify any requirement imposed on the committed person. *Black*, 594 S.W.3d at 592 (citing § 841.102(a), (c)). The trial court must set a formal hearing only if it finds probable cause, which then triggers additional constitutional protections, and the parties are entitled to present evidence with the burden of proof resting on the state. *Id.* But if the trial court does not find probable cause to believe there's been a meaningful change to the person's behavioral abnormality, the review is concluded without a hearing. *Id.*

The Magistrate Judge pointed out that the continuation of Plaintiff's commitment did not directly result from Dr. Thorne's recommendation. Dr. Thorne's evaluation was undoubtedly considered by the trial court, but ultimately, Plaintiff's commitment was continued because of the state court judge's finding that there was "no evidence submitted to the Court to date to suggest that sex offender treatment of . . . Welsh has resulted in his behavioral abnormality having changed to the extent that . . . Welsh is no longer likely to engage in a predatory act of sexual violence." *See* Dkt. No. 20 at 6 n.4.

To the extent Plaintiff raises a new procedural due process claim related to the biennial review process on its face, he has failed to show a constitutional deprivation. "Simply put, individuals committed to treatment as sexually violent predators have several avenues of procedural due process, and that process includes judicial oversight regarding the necessity and terms of their respective commitments." *See In re Commitment of Welsh*, 661 S.W.3d 861, 866 (Tex. App.—Beaumont, 2022), *pet. denied* (July 14, 2023). Plaintiff received all the process he was due during his biennial review.

**iii. Other procedural protections**

The Court notes that in addition to the biennial review process, state law provides that if at any time the TCCO determines that an SVP's behavioral abnormality has changed to the extent that the person is no longer likely to engage in a predatory act of sexual violence, the office shall authorize the person to petition the court for release. Tex. Health & Safety Code § 841.121. The trial court must promptly set a hearing on the authorized petition for release, and the SVP is entitled to an immediate evaluation by an expert. *Id.* Additionally, a civilly committed person has the right to file an unauthorized petition for release. The trial court must review unauthorized petitions and set a hearing unless it finds by a preponderance of the evidence that the person's behavioral abnormality has not meaningfully changed. *See id.* §§ 841.123–.124. If the court sets a hearing on either an authorized or unauthorized petition for release, the state must prove beyond a reasonable doubt that that the person's behavioral abnormality has not changed to the extent that the petitioner is no longer likely to engage in predatory sexual violence. *See id.* §§ 841.121; 841.124.

Finally, state courts have authorized civilly committed SVPs to seek relief through mandamus proceedings when challenging trial-court decisions denying petitions for release or biennial reviews. *Welsh*, 661 S.W.3d 861 at 867. Plaintiff has sought relief through multiple unauthorized petitions for release and mandamus petitions to challenge his ongoing confinement in the Texas Civil Commitment Center. *See* Dkt. No. 1 at 11, 12; Dkt. No. 17 at 7–8; Dkt. No. 20 at 12 n.6.

**iv. Dr. Thorne's evaluation**

Dr. Thorne conducted a clinical interview with Plaintiff and administered two actuarial assessments—the Hare Psychopathy Checklist and the Static-99R. He also reviewed Plaintiff's civil commitment file and history and spoke with Plaintiff's TCCO case manager and sex-offender treatment provider. *See* Dkt. No. 1 at 17, 20, 27. In his report, Dr. Thorne discusses "various empirically supported risk factors" present in Plaintiff's history, his assessment scores, Dr. Thorne's personal observations, and the available information about Plaintiff's participation in sex offender treatment. *Id.* at 17–27.

These risk factors include Plaintiff's criminal history, including five separate sex offenses, three of which involved child victims. Dr. Thorne explained that "the selection of victims much younger than the offender, as well as the selection of both stranger victims and extrafamilial victims . . . has been shown to be related to higher risks for sexual reoffending." *Id.* at 22. Additionally, Dr. Thorne emphasized that "multiple sex offenses (including continued offending after punishment) has been shown to be one of the strongest and most consistent empirical predictors of sex recidivism." *Id.* He explains that Plaintiff was "under the influence of alcohol and/or illicit drugs during the commission of some (if not all) his documented sex offenses," and pointed out that "individuals whose sexual offenses are considered to be 'triggered' by drug or alcohol use are thought to be at a higher risk of recidivism." *Id.* at 24. Additionally, Dr. Thorne emphasized that Plaintiff was at a higher risk for general and sexual recidivism because of his displayed anti-social orientation and pattern of criminal versatility. *Id.* at 22.

But Dr. Thorne considered far more than just Plaintiff's criminal history. He also considered that "the nature, level, and/or frequency of Mr. Welsh's sexually deviant

behavior (and thoughts/fantasies) may not necessarily be thoroughly reflected by a mere consideration of his convictions for sex offenses." *Id.* at 22. For example, Plaintiff previously "reported [the] inability to gain control over his deviant arousal (masturbating to underage children)." *Id.* Additionally, Dr. Thorne mentions an accusation by Plaintiff's former mother-in-law alleging that he "molested [his three daughters] but they were too afraid to say anything because he told them he would kill them if they ever said anything."

Dr. Thorne also found that Plaintiff had, at least once, been unsuccessfully discharged from court-ordered outpatient sex offender treatment and had, on multiple occasions, violated the terms or conditions of mandatory supervisions. *Id.* at 24. Dr. Thorne notes that this type of difficulty complying with rules is associated with increased levels of sexual recidivism. *Id.*

Some mitigating facts were also included in Dr. Thorne's report. He mentions that Plaintiff has healthy social support and appears to have the capacity for age-appropriate employment. *Id.* at 24–25. The report also indicates that in his more recent sex offender treatment, Plaintiff actively and appropriately participated in group discussion, asked probing questions and gave feedback, and that he was generally accepting of feedback and honest. *Id.* at 26. Plaintiff was also completing his assignments. His treatment provider explained that "[h]e definitely knows treatment and gives good feedback. Sometimes he forgets to apply it to himself." *Id.* at 27. The report notes that Plaintiff was still in Tier 1 (the most restrictive tier), but that his case manager and treatment provider were considering promoting him to the next tier soon. *Id.* His treatment provider explained "[h]is biggest deal is separating legal stuff from treatment. *Id.* He needs treatment and sometimes he

doesn't separate the two," and that he "sometimes presents in a legalist manner, discuss[ing] laws rather than being treatment focused." *Id.*

Finally, Dr. Thorne discussed Plaintiff's current scores on psychological and actuarial assessments. Specifically, Dr. Thorn considered that Plaintiff scored within the "High" range of psychopathic characteristics on the Hare Psychopathy Checklist and within the "Average" risk range on the Static-99R. *Id.* at 18; 27.

Ultimately, Dr. Thorne concluded, based on all of the available information and in his expert opinion, that Plaintiff continued to meet criteria as having a behavioral abnormality that makes him likely to engage in a predatory act of sexual violence.

**v. Probable-cause determination**

Plaintiff appears to misunderstand the purpose of the biennial review process. He repeatedly asserts that Dr. Thorne failed to prove that Plaintiff suffers from the requisite behavioral abnormality. And he mistakenly cites standards applicable to original civil commitment proceedings. *See* Dkt. No. 22 at 17–18 (relying on cases discussing the standard for civil commitment under the federal criminal statutes). But the trial court already found beyond a reasonable doubt that Plaintiff suffers from a behavioral abnormality under Chapter 841 when it adjudicated Plaintiff as an SVP in 2015. State law does not require the state to re-adjudicate the SVP every two years. The only question during the biennial review is whether that behavioral abnormality has changed enough to warrant either a modification of an SVP's conditions or a hearing.

In other words, it was not incumbent upon Dr. Thorne, or even on the TCCC, to demonstrate anew every two years that Plaintiff has a behavioral abnormality. Instead, state law permits the trial court to presume that nothing significant has changed, unless it

finds probable cause to the contrary. The trial court may deny the review without a hearing—maintaining the status quo of civil commitment—unless it finds probable cause to believe that the person's behavioral abnormality has changed extensively enough that he is no longer likely to engage in sexually predatory acts.

Plaintiff has not shown that absent the alleged errors with Thorne's evaluation, the trial court would have found evidence of such a meaningful change in his behavioral abnormality. Plaintiff does not allege that Dr. Thorne concealed any evidence that Plaintiff had made progress in his treatment or that his behavioral abnormality had changed. But he does challenge several specific portions of Dr. Thorne's report.

**a. Static-99R Score**

Relevant here, he asserts that Dr. Thorne "tainted the probable cause determination when he failed to inform the District Court" that his Static-99R of +3 (placing him in the "average" risk range) was a change from his prior evaluation score of +5 (placing him in the "above average" risk range). *See* Dkt. No. 1 at 12, 27, 41. But Dr. Thorne did not hide Plaintiff's current Static-99R score from the trial court. He reported the score and the associated risk data. He explained that Plaintiff's score brought him within the "average" risk of reoffending. More importantly, Plaintiff's better score on a single assessment does not signal such a meaningful change in Plaintiff's behavioral abnormality that he is no longer likely to engage in sexually predatory acts, especially in light of the other empirical risk factors discussed by Dr. Thorne.

**b. Hare Psychopathy Score**

Next, Plaintiff asserts that Dr. Thorne incorrectly calculated his score on the Hare Psychopathy Checklist-Revised, also known as the PCL–R: 2nd Edition. Specifically,

Plaintiff alleges that Dr. Thorne "recklessly misstated" his total score of 28, placing him in the "High" range of psychopathic characteristics. Plaintiff contends that his total score must be wrong because it is more than the sum of his Factor 1 and Factor 2 scores, which were 12 and 13, respectively. So, he claims that Dr. Thorne improperly added three points to his score. But nowhere does the report say that the total score is merely a sum of the two factor scores.[3] As explained by the Magistrate Judge, Dr. Thorne's report is entitled to a presumption of correctness. *See Youngberg*, 457 U.S. at 322. Plaintiff has not overcome that presumption.

**c. Other alleged errors**

Plaintiff also alleges that Dr. Thorne prejudiced the probable cause determination by including unfounded allegations that he may have molested his children. But, as discussed by the Magistrate Judge, Dr. Thorne mentioned only that there was an allegation that Plaintiff's children may possibly be additional victims, and he considered that Plaintiff's criminal convictions may not fully reflect the extent of his "sexually deviant behavior." Similarly, Dr. Thorne's report also mentions that Plaintiff was charged with sexually assaulting a different 15-year-old victim in 2009, but the charge was dismissed when the victim refused to identify him. *See* Dkt. No. 1 at 23.

---

[3] To the contrary, it appears that in addition to the Factor 1 and Factor 2 scores, individual scores from "two additional items (promiscuous sexual behavior and many short-term relationships) contribute to the total score." Sonja Krstic, Craig S. Neumann, Sandeep Roy, Carrie A. Robertson, Raymond A. Knight & Robert D. Hare, Using Latent Variable- and Person-Centered Approaches to Examine the Role of Psychopathic Traits in Sex Offenders, PubMed Central, April 13, 2017, *https://www.ncbi.nlm.nih.gov/pmc/articles/PMC5640453/*
*See also* Robert D. Hare, Ph.D., Profile Report, Hare PCL-R: 2nd Edition (2004) (noting that "two items not included in Factor or Facet scores . . . contribute to the Total Score, which can range from 0 to 40").

Additionally, Plaintiff contends that Dr. Thorne misdiagnosed him with pedophilia and ephebophilia, even though Plaintiff believes he does not meet the diagnostic criteria for those conditions under the DSM-V. Again, Plaintiff disagrees with Dr. Thorne's conclusion, but Dr. Thorne's professional opinion is entitled to the presumption of correctness. And again, Plaintiff has not overcome that presumption. Plaintiff asserts that Dr. Thorne did not substantiate his diagnoses with enough supporting facts to prove that Plaintiff met the relevant criteria in the DSM-V. But Plaintiff has not demonstrated that Dr. Thorne is required to justify each of his diagnostic impressions.[4] Nor has he shown that his own opinion should be credited over that of the expert. Finally, Plaintiff has failed to support his conclusion that Dr. Thorne's opinion was based on anything other than his professional judgment.

* * *

In sum, Plaintiff has not shown that Dr. Thorne's evaluation was a substantial departure from accepted professional norms, nor did he show that his conclusions were arbitrary in the constitutional sense. Moreover, even if the less favorable parts of Thorne's report were removed from consideration, Plaintiff has not identified any evidence suggesting that his behavioral abnormality had changed to the extent that he was no longer likely to engage in a predatory act of sexual violence. As a result, the Court overrules Plaintiff's

---

[4] The Court notes that Dr. Thorne does mention some facts that may have contributed to his diagnoses, including Plaintiff's prior admission that he struggled "to gain control over his deviant arousal (masturbating to underage children)," and that three of his sex-offense convictions involved child victims—one six-year-old child and two 15-year-old children. *See* Dkt. No. 1 at 22–24. Additionally, Dr. Thorne notes that Plaintiff began dating his wife when she was 15 years old and he was 20 years old. *Id.* at 22.

objections and adopts the findings, conclusions, and recommendation of the Magistrate Judge.

## 5. Conclusion

The Court orders:

(1) Plaintiff's complaint is dismissed with prejudice under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii) for failure to state a claim.

(2) Dismissal of this action does not release Plaintiff or the institution where he is incarcerated from the obligation to pay any filing fee previously imposed. *See Williams v. Roberts*, 116 F.3d 1126, 1128 (5th Cir. 1997).

(3) This dismissal shall count as a qualifying dismissal, or "strike," under 28 U.S.C. §§ 1915 and 1915A, 42 U.S.C. § 1997e, and *Adepegba v. Hammons*, 103 F.3d 383 (5th Cir. 1996), because Plaintiff sought *in forma pauperis* status and failed to state a claim. Plaintiff is cautioned that if he accumulates three strikes, he may not proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is in imminent danger of serious physical injury. *See* 28 U.S.C. § 1915(g).

(4) All relief not expressly granted is denied, and any pending motions are denied.

(5) Plaintiff is advised that if he appeals this order, he will be required to pay the appeal fee of $505.00 or submit an application to proceed *in forma pauperis* at the same time he files his notice of appeal.

Judgment shall be entered accordingly.

Dated October 4, 2023.

JAMES WESLEY HENDRIX
United States District Judge